FILED
 2015 Dec-09  PM 01:32
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JONATHAN WRYN VANCE,** | } |
| Petitioner, | } |
| v. | }   Case No.:   **2:13-CV-8022-RDP** |
|  | }                **2:08-CR-0286-RDP-RRA** |
| **UNITED STATES OF AMERICA,** | } |
| Respondent. | } |

## MEMORANDUM OPINION

This matter is before the court on Petitioner Jonathan Wryn Vance's Motion Under 28 U.S.C. § 2255 Requesting the District Court to Consider This Application for Relief Based on Actual Innocence.  (Doc. #1).  The Petition has been fully briefed.  (Docs. # 3, 12, and 13). For the reasons discussed below, Petitioner's Motion is due to be denied.

**I.     Background**

On July 29, 2008, a grand jury in this district returned a 45-count indictment against Petitioner, charging him with numerous crimes, including Interstate Communications - Threats to Persons, in violation of 18 U.S.C. § 875(d); Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251; Use of Computer to Entice a Minor to Engage in Sexual Activity, in violation of 18 U.S.C. § 2422(b), and Fraud with Identification Documents, in violation of 18 U.S.C. § 1028(a)(7), (b)(2), and (c)(3)(A). (Crim. Doc. # 1).

On October 1, 2008, a grand jury in the Middle District of Alabama returned a separate ten-count indictment charging Petitioner with additional crimes, including Interstate Communications-Threats to Persons, in violation of 18 U.S.C. § 875(d), and Transporting in Aid

of Racketeering, in violation of 18 U.S.C. § 1952. The Middle District case was transferred to this district with Petitioner's consent. (Case No. 2:08-cr-00493-RDP-RRA, Doc. # 1).

On January 15, 2009, Petitioner executed two plea agreements, one in each case, in which he agreed to plead guilty to twenty-six of the counts against him. (Crim. Doc. # 17; Case No. 2:08-cr-00493-RDP-RRA, Doc. # 5). In exchange, the Government agreed to dismiss nineteen other counts. (Crim. Doc. # 17). The statutory maximum and minimum sentence for each count to which Petitioner pled guilty varied, but for ten of the twenty-six counts to which he pled guilty, the statutory maximum for each such count was life imprisonment, with a mandatory minimum of ten (10) years. Another one of the counts to which Petitioner pled guilty carried a maximum sentence of thirty (30) years, with a mandatory minimum of fifteen (15) years. (Crim. Doc. # 17).

On April 16, 2009, Petitioner was sentenced to imprisonment for a term of 216 months (eighteen (18) years), followed by a lifetime term of supervised release. Judgment was entered to that effect on May 8, 2009. (Crim. Doc. # 26). Petitioner was represented by experienced counsel, Tommy J. Spina, throughout this process.

**II.     Analysis**

On June 24, 2013, more than four years after his plea and sentencing, Petitioner, acting *pro se*, filed the instant section 2255 Motion. (Doc. # 1). Petitioner argues that "actual innocence" excuses his late filing of his Motion. (Doc. # 1). He argues that he is actually innocent of the charges to which he pled guilty because Congress exceeded its authority under the Commerce Clause in enacting the statutes at issue. (Doc. # 1). For the reasons discussed below, Petitioner's arguments fail.

### A. Petitioner Waived Any Right to Post-Conviction Relief

Petitioner waived the right to seek the relief requested in his Motion. Both Plea Agreements executed by Petitioner contained a Waiver of Right to Appeal and Post-Conviction Relief. (Crim. Doc. # 17; Case No. 2:08-cr-00493-RDP-RRA, Doc. # 5). In exchange for Petitioner entering into the Plea Agreements, which included the waivers, the Government, among other things, moved to dismiss nineteen additional counts contained in the indictment in the case that originated in this district. (Crim. Doc. # 17).

A waiver of the right to appeal and to post-conviction relief is valid if the defendant made the waiver knowingly and voluntarily. *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005). Petitioner has not argued that his pleas and waivers were not knowingly or voluntarily made. When a valid appeal-collateral review waiver is entered into knowingly and voluntarily and contains express language waiving the right to collateral review, it is enforceable and precludes the defendant from collaterally attacking a sentence. *Williams*, 396 F.3d at 1342. Both of Petitioner's Plea Agreements specifically waive not only his right to appeal, but also his "right to challenge any conviction or sentence imposed . . . in any collateral attack, including, but not limited to a motion brought pursuant to 28 U.S.C. ' 2255 . . . ." (Crim. Doc. # 17; Case No. 2:08-cr-00493-RDP-RRA, Doc. # 5). Because Petitioner waived his right to seek the collateral relief he seeks in this petition, and that waiver is valid and enforceable, Petitioner's Motion is due to be denied.

### B. Petitioner's Section 2255 Motion is Time-Barred

Even if Petitioner had not waived his right to collateral relief, Petitioner's Motion is nevertheless barred by the applicable statute of limitations. Section 2255 allows a federal

3

prisoner to seek post-conviction relief from a sentence imposed in violation of the Constitution or laws of the United States or if it is otherwise subject to collateral attack. However, in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress created a one-year statute of limitations for section 2255 motions, running from the latest of four dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The relevant date here is the date on which the judgment of conviction became final. *Id*. Judgment was entered on May 8, 2009. (Crim. Doc. # 26). A federal criminal judgment that is not appealed becomes final for the purpose of section 2255 when the time for filing a direct appeal expires. *See, e.g., Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011); *Sanchez–Castellano v. United States*, 358 F.3d 424, 427-28 (6th Cir. 2004). Therefore, Petitioner's conviction became final on May 22, 2009, fourteen days after the district court entered judgment.[1] *See* Fed.R.App.P. 4(b)(1).

---

[1] On November 11, 2012, the court issued an amended Judgment to correct a scrivener's error so that Petitioner would not be responsible for double payment of restitution. Such an amendment does not reset the § 2255(f) limitations clock. *See Murphy v. United States*, 634 F.3d 1303, 1309 (11th Cir. 2011) (a Rule 35(b) modification does not constitute a new judgment of conviction that restarts § 2255's statute of limitations clock.).

The court notes that section 2255's limitations period is subject to equitable tolling. But that doctrine applies only if a movant can establish that he "untimely file[d] because of extraordinary circumstances that are both beyond his control and unavoidable even with due diligence." *Outler v. United States*, 485 F.3d 1273, 1280 (11th Cir. 2007) (quoting *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000)). Equitable tolling is a remedy that "is sparingly applied," and the movant bears the burden of establishing the existence of both extraordinary circumstances and his own due diligence. *Williams v. United States*, 491 F.3d 1282, 1284-85 (11th Cir. 2007). Here, the record fails to reveal any circumstances that might entitle Petitioner to equitable tolling of the limitations period.

Congress's overriding purpose in enacting AEDPA was "'to achieve finality in criminal cases, both federal and state.'" *Jones v. United States*, 304 F.3d 1035, 1039 (11th Cir. 2002) (per curiam) (quoting *Brackett v. United States*, 270 F.3d 60, 69 (1st Cir. 2001)). Because Petitioner did not file his section 2255 Motion until June 24, 2013 (Doc. # 1), more than four years after the judgment became final, that motion is due to be dismissed as untimely.

  **C.** **Petitioner's Motion is Procedurally Barred**

Petitioner's Motion is also procedurally barred due to his failure to appeal the judgment at issue. Under the procedural default rule, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a [section] 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). Here, no appeal was filed. Thus, Petitioner's claim here is procedurally defaulted unless one of the two exceptions to the procedural default rule applies. *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011).

> The exceptions are: (1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence. *See Lynn*, 365 F.3d at 1234. Under the cause and prejudice exception, a [section] 2255 movant can avoid application of the procedural default bar by "show[ing] cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *Id*. Under the actual innocence exception—as interpreted by current Supreme Court doctrine—a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself. *See Dretke v. Haley*, 541 U.S. 386, 388 [] (2004).

*McKay*, 657 F.3d at 1196.

Petitioner does not argue the "for cause and prejudice" exception applies to his petition. Rather, he advances an "actual innocence" claim based upon his assertion that the statutes under which he was prosecuted -- violations of which he has admitted -- exceeded Congress's power under the Commerce Clause. He further argues that to allow his conviction to stand would represent a fundamental miscarriage of justice.

As the Supreme Court has explained, actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Actual innocence means that the person convicted did not commit the crime. *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997), *cert. denied*, 520 U.S. 1267 (1997), quoting *Johnson v. Hargett*, 978 F.3d 855, 859–60 (5th Cir. 1992), citing *McCleskey v. Zant*, 499 U.S. 467 (1991). "Even if the court, as one reasonable factfinder, would vote to acquit, the court must step back and consider whether the petitioner's evidentiary showing most likely places a finding of guilt beyond a reasonable doubt outside of the range of potential conclusions that any reasonable juror would reach." *Doe v. Menefee*, 391 F.3d 147, 173 (2d Cir. 2004). In other words, a court may determine that, as factfinder, it would return a verdict of not guilty, yet still be duty bound to reject a petitioner's

6

argument that he is actually innocent. *See, e.g., Lambert v. Blackwell*, 134 F.3d 506 (3d Cir .1997), cert. denied, 532 U.S. 919 (2001).

An "actual innocence" exception to the AEDPA's procedural bar requires the petitioner (1) to present new reliable evidence that was not presented at trial, and (2) to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). To be credible, "such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. As the Eleventh Circuit noted in *Melson v. Allen*, "[t]he demanding nature of the *Schlup* standard ensures that only the 'extraordinary' case will merit review of the procedurally barred claims." 548 F.3d 993, 1002 (11th Cir. 2008).

Petitioner's "actual innocence" claim is premised on his argument that that there was no element of "interstate commerce" in his conduct and, thus, he is actually innocent. Petitioner pled guilty to counts of Interstate Extortion; Attempt to Persuade, Induce, and Entice a Minor by Computer to Engage in Sexual Activity; Attempt to Sexually Exploit a Minor; and Transfer, Possess, and Use in Interstate Commerce, Via the Internet, Without Lawful Authority, a Means of Identification of Another Person. (Crim.Doc. # 26). More specifically, Petitioner used the internet to threaten and extort female children and young women, aged from 10 years to 26 years old. He used various means, via the internet, to "hijack" the victims' Facebook and email accounts, and then threaten and extort the victims into sending pictures of the victims and other

7

female relatives clothed, in bra and panties, and fully naked. Petitioner admitted he received naked photos in this manner. He also admitted that he knew some of the victims were underage girls. More detailed facts admitted by Petitioner are set out in his two Plea Agreements. (Doc. # 3-1).

Petitioner has not supported his actual innocence allegation with any new evidence showing that he did not commit the acts that constituted the offenses with which he was charged. Therefore, he has failed to show he is entitled to review of his procedurally defaulted claim through the "actual innocence" or "fundamental miscarriage of justice" gateway.

### D.     Commerce Clause

Petitioner further argues that that the Commerce Clause requires that his conduct involve some element of "interstate commerce" to survive constitutional scrutiny, and that the facts of this case did not involve sufficient interstate commerce for his conviction and sentence to stand. He bases this argument on the Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012) (hereinafter "*NFIB*"). Petitioner's argument misses the mark.

The *NFIB* decision was issued in 2012, three years after Petitioner's conviction and sentence became final. But it did not announce the type of rule that could be applied retroactively in a federal habeas review. To be applied retroactively, rules must be "substantive" or "a watershed rule of criminal procedure implicating the fundamental fairness of the criminal proceeding." *Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004). "Substantive" rules include "decisions that narrow the scope of a criminal statute by interpreting its terms" and "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's

8

power to punish." *Schriro*, 542 U.S. at 351–52, citing *Bousley v. United States*, 523 U.S. 614. 620–621 (1998). *Saffle v. Parks*, 494 U.S. 484, 494–495 (1990); and *Teague v. Lane*, 489 U.S. 288, 311 (1989). *NFIB* involved the application of the Commerce Clause to the individual mandate contained within the Patient Protection and Affordable Care Act which compelled the uninsured to engage in commerce by purchasing insurance. But nothing in the language or logic of *NFIB*, which addressed the Affordable Care Act, limits conduct proscribed under the criminal statutes under which Petitioner was charged and pled guilty, nor did it bring forth a "watershed rule of criminal procedure." *Schriro*, 542 U.S. at 351–52.

Moreover, the Eleventh Circuit has recently rejected an argument similar to that made by Petitioner. *United States v. Parton*, 749 F.3d 1329 (11th Cir 2014). The defendant in *Parton* sought to have his conviction for production of child pornography overturned on the basis that the "interstate commerce nexus was insufficient" because the only basis was that the device used to make the pornographic images was a camera that had traveled in interstate commerce. 749 F.3d at 1330. The *Parton* court held that *NFIB* did not overrule prior precedent regarding the application of the Commerce Clause in crimes involving child pornography. Other circuit courts have similarly determined that *NFIB* "did nothing" to restrict Congress's power to control the intrastate manufacture and possession of child pornography. *See, e.g., United States v. Rose*, 714 F.3d 362 (6th Cir.2013); United States v. Boyle, 700 F.3d 1138 (8th Cir. 2012).

Finally, Petitioner's argument that *NFIB* overruled *Raich v. Gonzales*, 545 U.S. 1 (2005) is without merit. In *Raich*, the Court held that Congress has the power to enact comprehensive legislation to regulate the interstate market for marijuana, even when the specific transactions are wholly intrastate, because marijuana is a "fungible commodity." 545 U.S. at 25. But *NFIB* did

9

not overrule *Raich*; it merely distinguished it. 132 S. Ct. at 2593. Thus, *Raich* still stands for the proposition that Congress has the power to enact legislation regulating even purely intrastate transactions.

Petitioner's argument that the court lacked jurisdiction over his crimes because they involved no interstate commercial activity is also foreclosed by Eleventh Circuit precedent. Not only did Petitioner's computer move in interstate commerce, but also the internet itself, through which Petitioner communicated with his victims and threatened and extorted them, is a clear channel of commerce that is subject to congressional regulation. *United States v. Faris*, 583 F.3d 756, 758–59 (11th Cir. 2009) (superseded on other grounds as stated in *United States v. Jerchower*, 631 F.3d 1181, 1184 (11th Cir. 2010)); *United States v. Hornaday*, 392 F.3d 1306, 1310–11 (11th Cir. 2004). In *Faris*, the Eleventh Circuit clarified that the internet is a facility of interstate commerce, and Congress' plenary power under the Commerce Clause authorizes it to prevent the injurious or harmful uses of the internet, as well as other instrumentalities or channels of interstate commerce, even where communications are not routed over state lines. *Id.* at 759. Accordingly, Petitioner's claim that the statutes under which he was convicted and sentenced exceed Congress' Commerce Clause power lacks merit. Congress has ample power to punish the type of conduct in which Petitioner engaged.

### III. Conclusion

For all these reasons, Petitioner's Motion is due to be denied.

A separate order will be entered.

The Clerk is **DIRECTED** to send a copy of this Order to Petitioner.

**DONE** and **ORDERED** this December 9, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE